1  Yianna C. Reizakis
   Nevada Bar No. 9896
2  LEGAL ANGEL
3  330 E Warm Springs Road
   Las Vegas, Nevada 89119
4  Tel: (702) 315-4287; Fax: (702) 315-4224
   Email: mail@legalangel.com
5  And
   Anthony M. Paglia, Esq.
6  Nevada Bar No. 11234
7  ANTHONY PAGLIA INJURY LAWYER
   255 E Warm Springs Road, Suite 100A
8  Las Vegas, NV 89119
   Tel: (702) 830-7070; Fax: (702) 522-0504
9  Email: apaglia@anthonypaglia.com
   Counsel for Plaintiffs
10 WILLIAM and ELLA McKNIGHT

11

12                    UNITED STATES DISTRICT COURT

13                          DISTRICT OF NEVADA

14

15 WILLIAM McKNIGHT, individually; ELLA        CASE NO. 2:16-cv-2643-APG-PAL
   McKNIGHT, individuallly,
16                                             **Stipulation and Order to Waive
          Plaintiffs,                          Confidentiality**
17
   v.
18
   NOBU HOSPITALITY GROUP LLC, a Foreign
19 Corporation; DOES I through X; and ROE
   CORPORATIONS I through X, inclusive,
20
   ____Defendants.

21                          <u>**STIPULATION**</u>

22
          IT IS HEREBY STIPULATED by and between the parties, through their respective counsel,
23
   that Confidentiality is **<u>waived</u>** on the attached documents (the documents are excerpts from the Hotel
24
   License and Cooperation Agreement by and between Nobu Hospitality, LLC, and Desert Palace, Inc.).
25
   The disclosure limitations detailed in the Stipulated and Agreed F.R.E. 502 (D) Protective Order
26
27 Governing the Protection and Exchange of Confidential Discovery Material **<u>shall no longer apply to</u>**

28

**the attached documents**.  Plaintiffs' counsel is free to attached these documents to pleadings and motions filed with the court as needed and is not required to file these document under seal.

DATED this 18 day of September 2017.

By /s/ ~~[signature]~~

James R. Olson, Esq.
Nevada Bar No. 000116
Thomas D. Dillard, Jr., Esq.
Nevada Bar No. 006270
OLSON, CANNON, et. al.
9950 West Cheyenne Ave.
Las Vegas, NV 89129
Tel: (702) 384-4012; Fax: (702) 383-0701
Email: jolson@ocgas.com;
tdillard@ocgas.com
Attorneys for Defendant
NOBU HOSPITALITY GROUP, LLC

DATED this 14th day of September 2017.

By /s/ Yianna C. Reizakis
Yianna C. Reizakis
Nevada Bar No. 9896
LEGAL ANGEL
330 E Warm Springs Road
Las Vegas, Nevada 89119
Tel: (702) 315-4287; Fax: (702) 315-4224
Email: mail@legalangel.com
And
Anthony M. Paglia, Esq.
Nevada Bar No. 11234
ANTHONY PAGLIA INJURY LAWYER
255 E Warm Springs Road, Suite 100A
Las Vegas, NV 89119
Tel: (702) 830-7070; Fax: (702) 522-0504
Email: apaglia@anthonypaglia.com
Counsel for Plaintiffs
WILLIAM and ELLA McKNIGHT

## ORDER

IT IS SO ORDERED.

~~[signature]~~

UNITED STATES MAGISTRATE JUDGE

DATED: September 26, 2017



CONFIDENTIAL

Agreement. For the avoidance of doubt, Excluded Rights shall not include the Nobu Hotel Project Database or use thereof by Licensee in the manner contemplated by this Agreement.

"Exclusive" shall mean that Licensor and its Affiliates shall not grant to another Person during the Term of the Agreement the right to use the Nobu Concept Marks in connection with the development, ownership, operation, management or sublicense of any business providing transient occupancy or lodging or overnight accommodations in the Clark County Restricted Area (other than as expressly contemplated in Section 2(B)(1)).

"Excusable Delay" shall have the meaning ascribed to it in Section 12(D).

"Existing Nobu Database" shall mean all collections of data, information or other material now or hereafter owned or maintained by Licensor and its Affiliates and relating to or concerning the identity, contact information, preferences and guest history of any one or more guests, customers and patrons of Nobu Hotels, Nobu Restaurants, and their related facilities (but excluding any data independently compiled by Licensee in connection with the operation of the Nobu Hotel Project or the Nobu Restaurant Project), as amended or updated from time to time and regardless of whether now or hereafter existing.

"Extension Term" shall have the meaning ascribed to such term in Section 10(A)(2).

"Fees" shall have the meaning ascribed to such term in Section 7(A).

"FF&E" shall mean all furniture, fixtures and equipment (other than Operating Equipment and Operating Supplies) located at or used in connection with the Nobu Hotel Project, including: (i) all furniture, furnishings, built-in furniture, light fixtures, plumbing/bathroom fixtures, sinks, tubs, showers, toilets, hardware, waste baskets, carpeting, draperies, decorative millwork, decorative lighting, doors, windows, window treatments, heating/cooling/ventilation equipment and controls, safes, fire/life safety systems, music/entertainment systems, alarm clocks, countertops, vanity tops, cabinets, hardware, partitions (but not permanent walls), tile and grout, stone/masonry installations, televisions and other electronic equipment, interior plantings, interior water features, artifacts and artwork, and interior and exterior graphics; (ii) communications equipment (including wifi and other internet access); (iii) all fixtures and specialized hotel equipment used in the operation of kitchens, laundries, dry cleaning facilities, bars and restaurants; (iv) telephone and call accounting systems; (v) rooms management systems, point-of-sale accounting equipment, front and back office accounting, computer, duplicating systems and office equipment; (vi) cleaning and engineering equipment and tools; (vii) vehicles; and (viii) recreational equipment.

"Future Target Markets" shall have the meaning ascribed to such term in Section 2(B)(2).

"Future Target Market Restricted Period" shall have the meaning ascribed to such term in Section 2(B)(2).

"Gaming Authorities" shall have the meaning ascribed to such term in Section 13(B).

4

700029285 11033414
LEGAL_US_E # 93482214.2

NOBU000039



CONFIDENTIAL

projects or restaurants or any other projects or developments with rooms, suites or other areas used by guests for overnight accommodations or transient occupancy/lodging of any kind located anywhere outside of the Clark County Restricted Area (but subject to the provisions of Section 2(B)(2)) and (ii) developing or licensing to others the right to develop hotels, resorts, restaurants, bars, nightclubs or other hospitality businesses not branded with the Nobu Concept Marks within or outside of the Clark County Restricted Area, including, for the avoidance of doubt, other luxury hotels which do not use the Nobu Concept Marks in connection with their marketing, operation or name (but subject to Sections 2(B)(1)(b) and (2)(B)(2)).

(D)     Other than as contemplated by this Agreement, neither Licensee nor its Affiliates shall, or permit any third party to, at any time, construct, operate or maintain at Caesars Palace any business that is named with reference to a Nobu Concept Mark or includes, whether in English, Japanese or any other language, any reference to "Nobu," "Nobu Hotel" or "Nobu Restaurant" of any of the Nobu Concept Marks, except with respect to the Nobu Restaurant Project or otherwise to the extent permitted under the Nobu Restaurant Agreement or any other agreement between Licensor or any of its Affiliates, on the one hand, and Licensee or any of its Affiliates, on the other hand.

3.      DEVELOPMENT OF NOBU HOTEL PROJECT

(A)     Development of the Nobu Hotel Project. Licensee shall hire ▇▇▇▇▇▇▇▇▇ or another interior designer approved by Licensor (the "Project Designer") as promptly as practicable following the Effective Date and enter into an agreement with the Project Designer that requires the Project Designer, and thereafter will use commercially reasonable efforts to cause the Project Designer, to produce (i) conceptual drawings and site plans, artist renderings, digitally produced images, depictions, floor plans, layouts, descriptions and other plans and specifications relating to, among other things, the product quality and aesthetic style to be incorporated into the design, development, refurbishment, reconfiguration, furnishing and fixturing of the Nobu Hotel Project (which shall provide for at least one hundred eighty (180) Guest Rooms (including eighteen (18) Suites but excluding the Rooftop Villa Penthouse) that are of a quality consistent with the Aesthetic Standards (the "Initial Plans and Specifications"), (ii) schematic drawings, floor plans, proposed finishes and other specifications for the corridors adjacent to the Guest Rooms, the interior facing of all elevator cabs and elevator lobbies serving the Guest Rooms, the reception area for the Nobu Hotel Project and the entrance/lobby area(s) for the Nobu Hotel Project (collectively, upon approval of Licensor and Licensee, the "Common Area Renderings and Specs") and (iii) a sample Guest Room containing all applicable finishes, FF&E, Operating Equipment and Operating Supplies, decorative items and other furnishings which the Project Designer recommends to install in the Guest Rooms (upon approval of Licensor and Licensee, the "Sample Guest Room"); provided, that Licensee shall not be required to pay ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ for all such services; provided further, that Licensee shall be obligated to expend ▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇ (including all costs relating to designer and contractor fees and, for the avoidance of doubt, excluding all costs relating to the Rooftop Villa Penthouse) on (x) the renovation, refurbishment, replacement of FF&E and other upgrades to be made to Guest Rooms, room corridors, elevator finishes and the lobby, reception area and other areas of the Nobu Hotel Project (collectively, the "Project Costs") and (y) Operating Equipment, Operating Supplies and

13

NOBU000048

CONFIDENTIAL

(2)    Staged Construction Plans.    At each of the following stages of development of the Approved Plans and Specifications (a) schematic drawings for the Nobu Hotel Project, (b) floor plans and room layouts for each floor of Guest Rooms within the Nobu Hotel Project, (c) drawings for construction of Guest Room mock-ups; (d) lighting plans; (e) final equipment layouts and specifications, (f) fifty (50%) construction drawings, (g) the final architectural plans and specifications in sufficient detail for use as contract bids, and (h) reproducible renderings of quality and character suitable for marketing and advertising use (the "Staged Construction Plans"); and

(3)    Sample Guest Room and Common Area Renderings and Specs. Following Licensor's approval of the Sample Guest Room and the Common Area Renderings and Specs, all Guest Rooms, corridors adjacent to Guest Rooms, interior facing of elevator cabs and lobbies servicing the Guest Rooms and the reception/lobby areas for the Nobu Hotel Project shall be refurbished and decorated in a manner consistent in all material respects with the Sample Guest Room and the Common Area Renderings and Specs and, to the extent so refurbished and decorated, shall be deemed to comply with the Approved Plans and Specifications and with the System Standards.

(I)    Approval. Unless otherwise expressly set forth herein, with respect to any matter as to which Licensor or Licensee is entitled to give its approval hereunder, such approval shall mean the prior written approval of such party, which approval, except to the extent expressly provided herein to the contrary, shall not be unreasonably withheld, conditioned or delayed. In addition, with respect to Licensor: (i) Licensor may reject (to the extent rejection is permitted hereunder) each such proposed matter by providing written notice to Licensee within ten (10) Business Days after receipt thereof; (ii) if Licensor rejects any proposed matter, Licensor shall provide reasonably detailed written comments or corrections to Licensee that, if all accepted, would result in Licensor's approval; and (iii) if Licensor does not provide written notice of rejection within such ten (10) Business Day period, then, at any time following the end of such ten (10) Business Day period, Licensee may send a second request for Licensor's approval of such matter(s), and if Licensor does not respond to such second request for approval within five (5) Business Days of the delivery of such second request, then each matter so submitted to Licensor for its approval shall be deemed to be approved. Any matter approved by Licensor shall be deemed to comply with the Approved Plans and Specifications and with the System Standards and shall thereafter supersede any previously approved matters (to the extent of any inconsistency).

(J)    Future Renovations. Prior to commencing and/or undertaking any material alterations, refurbishments or improvements to any part of the Nobu Hotel Project after the Opening Date, Licensee shall deliver to Licensor, for its review and approval, a reasonably detailed set of plans and specifications for the proposed work, which approval shall be granted, in all cases, unless Licensor, acting reasonably, determines that the proposed work would, upon completion (1) depart from, or be inconsistent with, the Aesthetic Standards in any material respect, (2) change the number of Suites or the number of total Guest Rooms or (3) is likely to result in the Nobu Hotel Project being unable, following the completion of such work, to be operated and/or maintained in all material respects, in a manner consistent with the Operational Standards; it being acknowledged and agreed, that so long as the Nobu Hotel Project is initially developed, constructed, renovated and fit-out in a manner consistent with the Approved Plans

16

CONFIDENTIAL

and Specifications, then Licensee shall not be obligated to undertake any alterations, improvements or renovations (exclusive of necessary repairs and replacements) to the Nobu Hotel Project.

(K)     Construction Matters. Upon the reasonable request of Licensor, Licensee shall make available to Licensor copies of all reports, studies, draw requests schedules and other documents and materials of Licensor, its contractors, suppliers and consultants relating to the design, construction and furnishing of the Nobu Hotel Project. Licensor shall be invited to attend and may have a representative attend (personally or by phone) any regularly scheduled construction meeting or similar meeting regarding the development of the Nobu Hotel Project.

(L)     Technical Services. Licensor shall render the following technical advisory services to Licensee, to the extent reasonably requested by Licensee, from time to time, and the Nobu Hotel Project during the Pre-Opening Period (the "Technical Services"):

(1)     advice in formulating or refining the overall design concepts for the Nobu Hotel Project in a manner consistent with the System Standards, consultation with Licensee in connection with the development and preparation of each of the Staged Construction Plans for the construction and development of the Nobu Hotel Project and all related Nobu Hotel Project facilities and in formulating or refining preliminary layouts, drawings, and designs for the interior of the Nobu Hotel Project, including Guest Rooms, and the furnishing and equipping thereof, and, in connection therewith, may recommend to Licensee layouts and other criteria and specifications for the facilities to be included in the Nobu Hotel Project;

(2)     advice in connection with the selection and purchase of FP&E, Operating Equipment and Operating Supplies; and

(3)     advice as to the Nobu Hotel Project's design and construction team; provided, however, Licensor shall have no liability or responsibility for any act or omission of any such Person utilized by Licensee.

It is the intention of the Parties hereto that responsibility for implementation of each of the foregoing items is upon Licensee, and that Licensee shall have the right to make all determinations, in its sole and absolute discretion, regarding all such matters or the implementation thereof (subject to compliance of Licensee with the other terms and conditions of this Agreement), but that Licensor shall remain available to assist Licensee in such implementation.

(M)     Additional Services. Throughout the Term, Licensor shall provide on-going consulting to Licensee regarding the operational and management policies in effect at the Nobu Hotel Project and more generally the operation and management of the Nobu Hotel Project, including related to security, insurance, emergency procedures, marketing, customer service, purchase orders for food and beverages, Operating Equipment and Operating Supplies, interior design, collection processes, financial performance, pest control, waste disposal, rentals, special events and deposits. Notwithstanding the foregoing, subject to compliance with the System Standards and all other obligations and commitments under this Agreement, Licensee shall have

NOBU000052



CONFIDENTIAL

required policies (such coverage shall protect Licensor, its named Affiliates and Licensee against claims arising from sickness, disease, death or injury to persons, and/or physical damage to tangible property, including loss of use, which may arise from services performed by or on behalf of Licensee, its employees, agents or representatives). However, Licensee may, at is sole discretion, self-insure any of the requirements set forth in Section 7(F)(1).

(1)     Licensee Insurance Coverage.

(a)     Prior to Opening.  At all times prior to the opening of the Nobu Hotel Project and at all times during any other period of construction (including renovations, alterations and improvements), until final completion thereof, Builder's Risk Insurance ("All Risk" or equivalent coverage) for the Nobu Hotel Project in an amount not less than full completed value replacement costs coverage plus the estimated cost of such construction. Licensee may, at its sole discretion, provide for builders risk insurance under its Global Property Program.

(b)     Property Damage Insurance.  At all times during the Term, "All Risk" (or its equivalent) property damage insurance for the Nobu Hotel Project protecting Licensee and Licensor, as their respective interests may appear, in an amount not less than the full replacement value thereof and including, among other things, (i) coverage for all physical loss or damage, including loss of use resulting therefrom, to the Nobu Hotel Project (including contents), (ii) coverage for earth movement, hurricane, flood and windstorm to the extent available at commercially reasonable rates, limits and deductibles, and (iii) with reasonable and customary exclusions for property of similar size and location.  Licensee may, at its sole discretion, provide for such coverage under its Global Property Insurance Program.

(c)     Business Interruption Insurance.  Effective at all times after the Opening Date, Business Interruption Insurance for the Nobu Hotel Project on an "All Risk" basis protecting both Licensee and Licensor, as their respective interests may appear.  Such insurance shall include, among other things, (i) coverage against all insurable risks of physical loss or damage, (ii) coverage for earth movement, hurricane, flood and windstorm to the extent available at commercially reasonable rates, limits and deductibles, and (iii) usual and customary exclusions for property of similar size and location.  Licensee may, at its sole discretion, provide for such coverage under its Global Property Insurance Program.

(d)     Liability Insurance.  At all times during the Term, commercial general liability insurance on an occurrence coverage form protecting Licensee and Licensor against claims brought in connection with the Nobu Hotel Project for bodily injury, death and damage to and theft of property of third persons (including loss of use resulting there from), in an amount not less than $1,000,000 per occurrence / $2,000,000 aggregate, and designating Licensee as a named insured and Licensor and its named Affiliates as additional insureds on a primary basis and not contributory with any other insurance maintained by Licensor.  Such liability insurance shall include such coverage as shall be commercially available, which shall include coverage against liability arising out of (i) the sale of liquor, wine and beer on the Nobu Hotel Project premises, (ii) personal injury liability, (iii) contractual liability and (iv) products and completed operations. Such insurance shall contain reasonable and customary exclusions for

26

NOBU000061

CONFIDENTIAL

property of similar size and location. Licensee may, at its sole discretion, provide for such coverage under its Global Casualty Insurance Program.

(e) Commercial Automobile Liability Insurance. At all times during the Term, commercial automobile liability insurance covering liability arising from the ownership, maintenance, use or operation of any auto, including those owned, hired or otherwise operated or used by or on behalf of Licensee, in an amount not less than $2,000,000 per accident bodily injury and property damage combined single limit. Licensee may, at its sole discretion, provide for such coverage under its Global Casualty Insurance Program.

(f) Umbrella/Excess Liability Insurance. At all times during the Term umbrella/excess liability insurance providing coverage at least as broad as the underlying coverages with minimum limits of $50,000,000 per occurrence / aggregate. Licensee may, at its sole discretion, provide for such coverage under its Global Casualty Insurance Program.

(g) Workers' Compensation Insurance. At all times during the Term, Statutory Workers' Compensation and Employers Liability covering all persons employed by Licensee and Licensee only. It is understood and agreed that Licensor, contractors, subcontractors, or any other Person performing work on or for the Nobu Hotel Project are required to provide evidence of their own Workers Compensation and Employers Liability Coverage as required by Law, with Employers Liability Limits of not less than $1,000,000 per employee, accident and disease.

(h) Professional Liability Insurance. At all times during the Term, professional liability insurance covering wrongful acts made by or on behalf of Licensee in an amount not less than $10,000,000 per occurrence. Claims-made coverage is permitted, provided that the policy retroactive date is continuously maintained prior to the Effective Date, and coverage is continuously maintained during all periods in which Licensee performs services under this Agreement, and for an additional period of two (2) years after the expiration or termination of this Agreement.

(i) Crime / Fidelity. At all times during the Term, fidelity and dishonesty insurance (including employee dishonesty), and money and securities insurance in an amount not less than $500,000; forgery or alteration insurance in an amount not less than $500,000; and theft, disappearance and destruction, inside/outside, insurance in an amount not less than $100,000.

With the exception of Professional Liability Insurance, all such policies of insurance described above shall be in the form of "occurrence insurance." Notwithstanding anything herein to the contrary, the insurance required pursuant to this Agreement is not meant to be in duplication of the insurance required under the Nobu Restaurant Agreement to the extent same is umbrella in nature.

(1) Deductibles and Self-insured Retentions. The funding of deductibles and self-insured retentions maintained by Licensee shall be the sole responsibility of Licensee.

(2) Waivers of Subrogation. Licensee and its insurers agree to waive all rights of subrogation against Licensor and its named Affiliates as respects any loss, damage,

27

700029285 11033414
LEGAL_US_E # 93482214.2



claims, suits or demands, howsoever caused, that are covered, or should have been covered, by valid and collectible insurance.

(3)   Notice of Cancellation.  Licensee shall endeavor to provide thirty (30) days' notice to Licensor of cancellation or non-renewal of any required insurance, to the extent the self-insurance permission does not come into play with respect to the required insurance.

(4)   Licensor Insurance.  Licensor shall provide evidence of the following insurance coverages to Licensee.  It is understood these coverages are purchased by Licensor in the ordinary course of business and are not intended to be primary coverage with respect to insurance required under Section 7(F)(1):

> Workers Compensation and Employers Liability Coverage with EL limits no less than $1,000,000 per employee, accident and disease.

> Commercial General Liability Coverage on an occurrence basis including personal injury, contractual liability, products/completed operations and personal and advertising injury coverage in an amount not less than $1,000,000 per occurrence/$2,000,000 general aggregate where applicable.

> Auto Liability on owned, non-owned, leased and hired vehicles in an amount no less than $1,000,000 combined single limit per accident for third-party bodily injury and/or property damage

> Umbrella/Excess Liability Coverage providing coverage as broad as the underlying policies above in an amount no less than $10,000,000 each occurrence/general aggregate.

A certificate of insurance evidencing the above coverages shall be provided to Licensee prior to the Effective Date.

8.    QUALITY MAINTENANCE AND NOTICES

(A)   Licensor shall have the right, upon reasonable notice and during normal business hours, to inspect the Nobu Hotel Project to determine compliance with the System Standards, and Licensee shall permit duly authorized representatives of Licensor to have such access to the Nobu Hotel Project for such inspection purposes; provided, that such inspection shall be carried out in such a manner as to cause minimum disruption to the operations of the Nobu Hotel Project.  In rendering the surveillance, Licensor shall have the right to be assisted by third Persons approved by Licensee (such approval not to be unreasonably withheld, conditioned or delayed).  Notwithstanding the foregoing, (i) any such inspection shall not materially disturb, interfere with or disrupt the business or operations of the Nobu Hotel Project, Licensee or any of Licensee's Affiliates, (ii) Licensee shall not be required to invite or admit Licensor or its agents, or provide notice to Licensor or its agents of, any internal or other meeting concerning the Nobu Hotel Project or any other matter, (iii) Licensee shall be entitled to exclude Licensor and its agents from any meeting at which matters other than the Nobu Hotel Project are discussed and (iv) Licensor shall be responsible and liable for all actions of its inspectors and agents while on-site at the Nobu Hotel Project.  Licensee may, at Licensee's cost and expense, utilize mystery

28

NOBU000063

CONFIDENTIAL

Effective Date, any of Licensee's Affiliates are directed to cease business with any Licensor Associate by any Gaming Authority, or if Licensee shall determine, in Licensee's sole and exclusive judgment, that any Licensor Associate is an Unsuitable Person, then Licensee shall, without prejudice to any other rights or remedies of Licensee including at Law or in equity, have the right to terminate this Agreement and its relationship with Licensor on no less than thirty (30) days notice to Licensor, provided, however, that if, prior to the expiration of such thirty (30) day period, Licensor takes such actions as may be necessary to satisfy the legitimate concerns of the Gaming Authority and/or the Compliance Committee, then such termination notice shall be deemed nullified and rendered of no force or effect.   Licensor further acknowledges that Licensee shall have the absolute right to terminate this Agreement in the event any Gaming Authority requires Licensee or any of its Affiliates to do so and any such termination by Licensee pursuant to this Section 13(B) shall not be subject to dispute by Licensor.

14.   MISCELLANEOUS

   (A)   Indemnification Against Third-Party Claims.

         (1)   By Licensee.   Licensee covenants and agrees to defend, indemnify and save and hold harmless Licensor, its Affiliates and their respective stockholders, directors, officers, agents and employees from and against all claims, losses, expenses, obligations, liabilities, liens, demands, charges, litigation and judgments, including court costs and reasonable attorneys' fees, incurred or suffered by them arising directly or indirectly from any claim, action, suit, demand, assessment, investigation, arbitration or other proceeding by or in respect of any third Person (a "Third-Party Claim") arising out of Licensee's breach of, or negligence or willful misconduct under or in connection with, this Agreement, including, without limitation, Licensee's fraudulent, intentional or unintentional wrongful or unauthorized use of the Nobu Concept Marks, except to the extent of any contributing breach, negligence or willful misconduct by Licensor.   The provisions of this Section 14(A) shall survive the termination of this Agreement for any reason.

         (2)   By Licensor.   In addition to its indemnification obligations under Section 9(i), Licensor covenants and agrees to defend, indemnify and save and hold harmless Licensee, its Affiliates and their respective stockholders, directors, officers, agents and employees from and against all claims, losses, expenses, obligations, liabilities, liens, demands, charges, litigation and judgments, including court costs and reasonable attorneys' fees, incurred or suffered by them arising directly or indirectly from any Third-Party Claim arising out of Licensor's breach of, or negligence or willful misconduct under or in connection with, this Agreement, except to the extent of any contributing breach, negligence or willful misconduct by Licensee.

         (3)   Procedures.   In connection with any Third-Party Claim for which a Person (any of such Persons, an "Indemnified Person") is entitled to indemnification under this Section 14(A), the Indemnified Person asserting a claim for indemnification under this Section 14(A) shall notify the party from which indemnification is being sought (the "Indemnifying Person") of such Third-Party Claim and the Indemnifying Person shall, at its sole cost and expense, defend such Third-Party Claim or cause the same to be defended by counsel

700029285 11033414
LEGAL_US_E # 93482214.2

NOBU000074

~~CONFIDENTIAL~~

designated by the Indemnifying Person and reasonably acceptable to the Indemnified Person. Notwithstanding the foregoing, the Indemnified Person, at the Indemnifying Person's expense, if the Indemnifying Person does not undertake and duly pursue the defense of such Third-Party Claim in a timely manner or, in the case of Licensee, if the Third-Party Claim is asserted by any Governmental Authority, may defend action, suit or proceeding or cause the same to be defended by counsel designated by the Indemnified Person. Neither the Indemnified Person nor the Indemnifying Person shall settle or compromise any Third-Party Claim that is the subject of a claim for indemnification under this Section 14(A) without the prior written consent of the other.

(B)    Sale of Securities. If a Party or any of its Affiliates shall, at any time or from time to time, "sell" or "offer to sell" any "securities" or incur any indebtedness, issued or incurred by it through the medium of any "prospectus", "bank book" or otherwise, it shall do so only in compliance with all applicable federal or state securities and lending Laws, and such Party shall clearly disclose to all purchasers, lenders and offerees that (a) neither the other Party, nor any of the other Party's Affiliates, nor any of their respective officers, directors, agents or employees, shall in any way be deemed an "issuer" or "underwriter" of said "securities," and that (b) the other Party, the other Party's Affiliates and their respective officers, directors, agents and employees have not assumed and shall not have any liability or responsibility for any financial statements, prospectuses or other financial information contained in any "prospectus", "bank book" or similar written or oral communication. The offering Party agrees to indemnify, defend and hold the other Party, the other Party's Affiliates and their respective officers, directors, agents and employees harmless of and from any and all liabilities, costs, damages, claims or expenses arising out of or related to such "sale" or "offer" of any "securities." All terms used, but not otherwise defined in this Section 14(B) shall have the same meaning as in the Securities Act of 1933, as amended.

(C)    Notices. Except as otherwise provided in this Agreement, all notices, demands, requests, consents, approvals and other communications (collectively "Notices"), required or permitted to be given hereunder, or which are to be given with respect to this Agreement, shall be in writing and shall be deemed to have been duly given and received on the date received (or refused) (a) if served personally or (b) if sent by a nationally recognized courier for next Business Day service and so addressed and if there is evidence of acceptance by receipt or refusal. Notices shall be sent to the following:

If to Licensee, to:         Desert Palace Inc.
                            One Caesars Palace Drive
                            Las Vegas, Nevada 89109
                            Attention: General Counsel
                            Facsimile: (702) 407-6418

With a copy to:



NOBU000075

```
┌─────────────────────────────────────┐
│ TRANSMISSION VERIFICATION REPORT     │
└─────────────────────────────────────┘
                              TIME  : 09/14/2017 16:35
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : U63088H4N827714
```

```
┌──────────────────────────────────────────────────────────────────────┐
│ DATE,TIME          09/14  16:27                                        │
│ FAX NO./NAME       7023830701                                          │
│ DURATION           00:08:22                                            │
│ PAGE(S)            12                                                   │
│ RESULT             OK                                                   │
│ MODE               STANDARD                                            │
│                    ECM                                                  │
└──────────────────────────────────────────────────────────────────────┘
```

# LEGAL ANGEL
## ATTORNEYS AT LAW

Yianna C. Reizakis, Esq.

September 14, 2017

*Via facsimile and regular mail*

Thomas Dillard, Jr., Esq.
OLSON, CANNON, et. al.
9950 W. Cheyenne Ave.
Las Vegas, NV 89129
**Fax:  702-383-0701**

|                    |   |                     |
|--------------------|---|---------------------|
| Case Number        | : | 2:16-cv-2643-APG-PAL |
| Date of Loss       | : | August 29, 2014     |
| Our File Number    | : | PL0811612           |

Dear Counsel:

Pursuant to your agreement, please sign and return the enclosed.

Sincerely,

*/s/ Yianna C. Reizakis*
Yianna C. Reizakis

Enclosure:  Stipulation and Order to Waive Confidentiality

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 09/14/2017 16:45
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : U63088H4N827714
```

```
DATE,TIME          09/14  16:36
FAX NO./NAME       7025220504
DURATION           00:09:13
PAGE(S)            12
RESULT             OK
MODE               STANDARD
```

# LEGAL ANGEL
## ATTORNEYS AT LAW

Yianna C. Reizakis, Esq.

September 14, 2017

*Via facsimile and regular mail*

Thomas Dillard, Jr., Esq.
OLSON, CANNON, et. al.
9950 W. Cheyenne Ave.
Las Vegas, NV 89129
**Fax:  702-383-0701**

| | | |
|---|---|---|
| Case Number | : | 2:16-cv-2643-APG-PAL |
| Date of Loss | : | August 29, 2014 |
| Our File Number | : | PL0811612 |

Dear Counsel:

Pursuant to your agreement, please sign and return the enclosed.

Sincerely,

*/s/ Yianna C. Reizakis*
Yianna C. Reizakis

Enclosure:  Stipulation and Order to Waive Confidentiality